# IN RE: TUTU WELLS CONTAMINATION LITIGATION
## RHODA J. HARTHMAN, ET AL., Plaintiffs
### v.
## TEXACO, INC., ET AL., Defendants

## ESSO STANDARD OIL, S.A., LTD., ET AL., Third-Party Plaintiffs,
### v.
## LAGA INDUSTRIES, LTD., ET AL., Third-Party Defendants

## FOUR WINDS PARTNERSHIP, Plaintiff
### v.
## TEXACO CARIBBEAN, INC., ET AL., Defendants

## ESSO STANDARD OIL, S.A., LTD., Counter-claimant and Third-Party Plaintiff
### v.
## LAGA INDUSTRIES, LTD., ET AL., Third-Party Defendants

Master Docket File No. 1989-107

Civil Nos. 89-220, 89-224

District Court of the Virgin Islands

Div. of St. Thomas and St. John

June 21,1995

350

RICHARD R. KNOEPFEL, ESQ., (Briggs, Knoepfel & Ronca), Charlotte Amalie, St. Thomas, V.I., and THOMAS H. HART, III, ESQ., (Alkon, Rhea & Hart), Christiansted, St. Croix, V.I., *for plaintiffs PID-Harthmans*

JOHN K. DEMA, ESQ., CAREY-ANNE MOODY, ESQ., (Law Offices of John K. Dema, P.C.), Christiansted, St. Croix, V.I., and DARREN DEFOE, ESQ., Waterford, Maine, *for plaintiff Four Winds Plaza Partnership*

ADDISON J. MEYERS, ESQ., MARY HOERBER, ESQ., (O'Connor & Lemos), Coral Gables, Florida, and EDGAR CHRISTENSEN, ESQ., (Law Offices of R. Eric Moore), Christiansted, St. Croix, V.I. *for defendants Texaco, Inc., Texaco Caribbean, Inc.*

ROBERT T. LEHMAN, ESQ., DEBRA ROSEN, ESQ., WILLIAM J. O'KANE, ESQ., CHRISTOPHER GIBSON, ESQ., (Archer & Greiner), Haddonfield, New Jersey, and DOUGLAS L. CAPDEVILLE, ESQ., Christiansted, St. Croix,

V.I., *for defendants Esso Standard Oil, S.A., Ltd. Esso Virgin Islands, Inc., and Esso Standard Oil, Co. (P.R.)*

RICHARD E. DALEY, ESQ., (Pattie & Daley), Christiansted, St. Croix V.I., and E. BARCLAY CALE, JR., (CO-COUNSEL), THOMAS A. DYE, ESQ., (Morgan, Lewis & Bockius), Miami, Florida, *for defendant Exxon Corporation*

ROBERT N. DE LUCA, ESQ., Philadelphia, Pennsylvania, *Attorney for Ana Gloria Ramos & Otto Bustelo, Esquire*

JOHN A. ZEBEDEE, ESQ., (Law Offices of James L. Hymes), Charlotte Amalie, St. Thomas, V.I., *for defendant Vernon Morgan*

FRANCIS E. JACKSON, JR., ESQ., Charlotte Amalie, St. Thomas, V.I., *for defendant Daniel Bayard*

CAROL ANN RICH, ESQ., (Campbell, Arellano & Rich), Charlotte Amalie, St. Thomas, V.I., *for defendant Ramsay Motors, Inc.*

NANCY D'ANNA, ESQ., Cruz Bay, St. John, V.I., and PATRICIA MARTINEZ LORENZO, ESQ., Hato Rey Puerto Rico, *for defendant L'Henri, Inc.*

MYRON J. BROMBERG, ESQ., JOHN M. NEWMAN, ESQ., New Jersey, and MARC Z. EDELL, ESQ., NJ, and KEVIN A. RAMES, ESQ., St. Croix, U.S.V.I., *Attorneys for Paul Lazare, Andreas Gal, The Duplan Corporation, Laga Industries, Ltd., Panex Industries, Inc., and Panex Co.*

JOHN R. COON, ESQ., (John R. Coon), Gallows Bay, St. Croix, V.I., *for defendant Western Auto*

RALDA V. SIMMONDS, ESQ., Charlotte Amalie, St. Thomas, V.I., *for defendant Virgin Islands Housing Authority*

GEORGE MARSHALL MILLER, ESQ., Charlotte Amalie, St. Thomas, V.I., *for defendant Thomas A. Gassett G.S. Industries, Inc.*

ROSALIE SIMMONDS BALLANTINE, ESQ., Attorney General for the Virgin Islands, By: HENRY THOMAS, Assistant Attorney General, Charlotte Amalie, St. Thomas, V.I., *for defendant V.I. Department of Education*

KATHERINE E. HARSCH, ESQ., (Bornn, Handy & Rashid), Charlotte Amalie, St. Thomas, V.I., *for defendant Siegfried Torinus and Waltrad Torinus*

DANIEL RIESEL, ESQ., New York, and VINCENT J. APRUZZESE, ESQ., New Jersey and EDWARD H. JACOBS, ESQ., St. Croix, U.S.V.I., *Attorneys for Law Firm of Goldman, Antonetti*

JOEL H. HOLT, ESQ., St. Croix, U.S.V.I., *Attorney for Eugenio C. Romero, Esquire*

BRITAIN H. BRYANT, ESQ., St. Croix, U.S.V.I., *Attorney for Warren B. Cole, Esquire*

BROTMAN, *Judge*

## OPINION AND ORDER

Pending before this court are several motions requesting reconsideration, clarification and modification of the court's March 20, 1995 Opinion and Order in which the court found that the Esso Defendants and their former counsel engaged in various acts of discovery misconduct warranting the imposition of sanctions. The parties moving for reconsideration, clarification and modification include the Esso Defendants (i.e., Esso Standard Oil, S.A., Ltd., Esso Standard Oil, Co., (Puerto Rico), and Esso Virgin Islands, Inc.) (hereafter "Esso"), the law firm of Goldman Antonetti & Cordova, and Francis Torres, Esq., Jose Cepeda, Esq., and Eugenio Romero, Esq. (collectively the "Clarification Movants").[1] Opposition briefs to these motions were filed by PID-Harthmans, Four Winds Plaza Partnership, Vernon Morgan, Texaco, Inc., Texaco Caribbean, Inc., Ramsay Motors, Inc., L'Henri, Inc. and Western Auto Supply Co. The court has grouped the Clarification Movants' claims into categories and will discuss each category in turn. The court incorporates herein the facts and procedural background set forth in its March 20, 1995 Opinion.

### I. Clarification Movants' Due Process Claims

All Clarification Movants raise arguments premised on violations of their due process rights. Esso's main contention is that the court violated Esso's due process rights by failing to afford Esso notice and an adequate opportunity to be heard prior to issuing its

---

[1] Additionally, a letter application joining Esso's motion was submitted by independent counsel for Ana Gloria Ramos and Otto Bustelo, Esq., both employees of Esso.

353

factual findings. Esso claims that it detrimentally relied on the court's October 25, 1993 Order and subsequent procedural history of the case. Esso's Motion to Clarify and Modify at 17. Esso further contends that it complied with the court's October 25, 1993 Order by presenting only those documents and witnesses required by the order. *Id.* at 19. Thus, Esso asserts that it understood the scope of the October/December 1993 proceedings to be preliminary and that the court would only make final findings of fact after a subsequent plenary hearing to be commenced in the event an Order to Show Cause was entered.

■ Other Clarification Movants also raise due process arguments in their motions. Goldman Antonetti & Cordova, Francis Torres and Jose Cepeda argue that their due process rights were violated because the court, in reaching its findings, considered, in part, prior conduct by the Clarification Movants during the discovery process. Memorandum of Law in Support of Motion to Reconsider and Reargue by Respondents Goldman Antonetti & Cordova and Francis Torres and Jose Cepeda at 5-7. The court's only response with regard to this argument is that the court need not evaluate each allegation of discovery misconduct in a vacuum. In fact, the court is entitled and encouraged to consider the parties' previous conduct, especially the existence of a history of dilatoriness, during the discovery process. *See Poulis v. State Farm Fire and Cas. Co.,* 747 F.2d 863, 868 (3d Cir. 1984).

■ ■ Eugenio Romero, in his Motion for Clarification and Reconsideration raises the following due process concerns: (1) if the court's March 20, 1995 Opinion and Order finds Eugineo Romero to be in contempt of court, then the requirements of due process have not been accorded to Mr. Romero; and (2) if the court's assessment that sanctions are warranted was based on the anomaly investigation and prior discovery problems, Mr. Romero's due process rights were violated because he was not placed on notice that the court would be considering such other conduct. Memorandum in Support of Motion for Clarification and Reconsideration by Eugenio Romero at 2-7. In response to Mr. Romero's first argument, the court clarifies its March 20 Opinion for the benefit of all Clarification Movants by confirming that the

court did not hold any party in contempt of court. Given this fact, no further response to Mr. Romero's first argument is necessary. With regard to Mr. Romero's second argument, the court makes reference to the preceding paragraph concluding that a history of prior discovery misconduct is appropriately considered by the court in making a determination as to sanctions.

 The court next addresses the due process arguments raised specifically as a result of this court incorporating in the March 20 Opinion its ruling on the objections to Magistrate Judge Barnard's Report and Recommendation concerning the Magistrate's January 15, 1993 Order. The court's ruling on the objections and responses to the Magistrate's Report and Recommendation was based on a *de novo* review of the hearings held before the Magistrate on April 23, 26 and 28, and June 3, 1993, a review of the record, and consideration of the objections and responses made by involved parties. *See* Court's March 20, 1995 Opinion at 15. Furthermore, on September 1, 1993, the court entertained argument with respect to these objections.[2] The hearings held on October 28 and 29 and December 9 and 10, 1993 had absolutely no bearing on the court's ruling with respect to the conduct related to the Magistrate's January 15, 1993 Order. Consequently, the Clarification Movants, having had ample opportunity to respond to all objections, were not entitled to any advance notice prior to the October/December 1993 hearings that the court would be issuing a ruling on the objections to the Magistrate's Report and Recommendation. The Clarification Movants were made aware of the court's intent to issue such a ruling at the September 1, 1993 hearing. *See* 9/01/93 Tr. at 23-24. This ruling was incorporated into the court's March 20 Opinion for reasons of efficiency in an attempt to resolve outstanding discovery issues and sanctions motions. The court also clarifies that this ruling forms an independent basis for the imposition of sanctions.

---

[2] At the September 1 hearing, Esso's counsel represented that Esso was afforded proper due process as the court held a plenary hearing and permitted the production of all relevant witnesses. 9/01/93 Tr. at 16. After the parties had an opportunity to present their arguments, the court notified all parties that it would take the objections to the Magistrate's Report and Recommendation under consideration and issue an opinion resolving the matter. *Id.* at 23-24. The court's March 20 Opinion incorporates the court's ruling with respect to the Magistrate's Report and Recommendation.

The Magistrate's Report and Recommendation awarded solely monetary sanctions. In their motions, the movants had requested sanctions consisting of monetary damages, contempt of a written court order and dismissal. While the court recognizes that Esso is in compliance with the order awarding monetary sanctions entered by the Magistrate, this court's partial reversal of the Magistrate's Report and Recommendation and conclusion that the behavior of Esso and its former counsel during the anomaly investigation was willful and in bad faith forms an independent basis upon which the court may decide to award further sanctions.

Having addressed some of the tangential due process arguments, the court will now deal with the arguments at the heart of the due process contentions raised by the Clarification Movants. "The fundamental requirements of due process are notice and a meaningful opportunity to be heard, but the 'concept is flexible, calling for procedural protection as dictated by the particular circumstance.'" *Harris v. City of Philadelphia*, 47 F.3d 1333, 1338 (3d Cir. 1995) (citing *Kahn v. United States*, 753 F.2d 1208, 1218 (3d Cir. 1985)); *see Adams v. Trustees of the New Jersey Brewery Employees' Pension Trust Fund*, 29 F.3d 863, 871 (3d Cir. 1994) (lack of notice of possible dismissal or failure to hold a preliminary evidentiary hearing does not necessarily void dismissal) (citing *Link v. Wabash R.R.*, 370 U.S. 626, 632 (1962)); *Roe v. Operation Rescue*, 920 F.2d 213, 217 (3d Cir. 1990) (due process requires meaningful opportunity to be heard appropriate to the nature of the circumstances presented); *Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1357, 1358-59 (3d Cir. 1990) (circumstances dictate the due process required in a given case). The Third Circuit Court of Appeals has determined that the type of procedural protections warranted in a given case is dictated by "all the circumstances and an accommodation of competing interests." *Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 570 (3d Cir. 1985). The court must respect an "individual's right to fairness and accuracy" as well as consider "the court's need to act quickly and decisively." *Id.*

■ A party facing the possible imposition of sanctions must be afforded "some occasion to respond" to the allegations made against it. *Id.* In commenting on what constitutes a sufficient

opportunity to respond to a request for sanctions, the Third Circuit has determined that

> any rigid rule would, to say the least, be undesirable. The circumstances must dictate what is required. In some cases an oral response may be sufficient, while in others an opportunity to file a written response must be accorded.... [W]e think a district court in the exercise of its sound discretion must identify and determine the legal basis for each sanction charge sought to be imposed, and whether its resolution requires further proceedings, including the need for an evidentiary hearing.
>
> We believe the rule we have announced has several factors to commend it. It gives the judge flexibility in deciding on the bound course to pursue. Thus, it permits some cases to be disposed of on the record and, to that extent, prevents unnecessary expenditure of judicial time. In other situations it mandates an evidentiary hearing to resolve disputes of material fact when the cold record may not disclose the full story.

*Jones*, 899 F.2d at 1358-59 (citations omitted); *see Beard v. Braunstein*, 914 F.2d 434, 446-47 (3d Cir. 1990) (court did not abuse its discretion by imposing sanctions without first holding an evidentiary hearing having afforded a party an opportunity to address allegations of discovery misconduct in writing which party chose to decline, instead requesting oral argument).

The court now turns to the specific arguments of the Clarification Movants who insist that they were not granted sufficient notice and opportunity to be heard. In order to address these contentions, the court will review the course of the proceedings, to the extent they are relevant on the issue of due process, which took place prior to the issuance of the March 20, 1995 Opinion and Order. The October/December 1993 factfinding hearings were convened upon the court's October 25, 1993 Order calling a hearing "for the purpose of making a determination of whether this Court should enter an order to show cause why certain defendants in this litigation, and certain of their counsel and/or other representatives should not be held in contempt, pursuant to 14 V.I.C. S 581, 18 U.S.C. S 401 and Rule 37 of the

Federal Rules of Civil Procedure, or be sanctioned pursuant to Federal Rule of Civil Procedure 37, *and in furtherance of the complete and orderly presentation of all relevant evidence.*" To aid the complete production of all evidence, the court then ordered that certain documents be produced and named witnesses appear. On October 28, 1993, the court, in its opening remarks, reviewed the purpose for the hearing and stated

> this is preliminary a fact finding hearing called to address allegations of misconduct in the litigation of this case. *This hearing is scheduled for the sole purpose of establishing facts for a later finding by this court*, that's the purpose of the hearing.
>
> Now I want to remind everyone that there's a history that discovery in this matter has been plagued with allegations of misconduct against the very same people, or some of the people that have been mentioned in this order, against ... some of the Defendants and their former counsel. Indeed, pending before me now are two prior motions for sanctions regarding bad-faith discovery practices and contempt of this court's orders. These are very serious allegations with grave and far-reaching consequences, and I'm going to treat them with the requisite degree of gravity and [they will] not be considered lightly.

10/28/93 Tr. at 12-13. The court further remarked that, upon learning of the appearances of discovery misconduct in this matter, it had instructed Esso's attorneys to inform other counsel about the hearing and directed all counsel to "prepare for an expedited hearing of this matter with all counsel and *indispensable fact witnesses present.*" *Id.* at 15-16. The court then reviewed for all present the authority upon which the court was relying in holding the hearing. The court advised counsel that it was proceeding under Federal Rules of Civil Procedure 11, 16(f), 26(g), 37, 28 U.S.C. S 1927 and its inherent powers which permit the court to sanction for misconduct. *Id.* at 18-19. For the remainder of the day on October 28, the court heard testimony from Mr. Agrelot.

On October 29, 1993, after further cross-examination of Mr. Agrelot, the court engaged in a discussion with the lawyers concerning the scope and direction of further hearings. The court

entertained suggestions from the attorneys as to how they would like to proceed when the hearings reconvened. The court expressed its deep concern for the nonproduction of documents in this matter and stressed that that is the exact issue that it intends to get to. 10/29/93 Tr. at 72. The court confirmed that it wants to find out who was responsible for the discovery misconduct and that this inquiry equally extends to Esso as well as its former counsel. *Id.* The court made clear that everybody was brought together for a reason and that the court's policy is to present everyone with an opportunity to speak. *Id.* at 71. Next, the court again reiterated its authority to conduct the hearings on misconduct stating that:

> The inherent power of the Court to control the members of the Bar that practice before it and the conduct of members of the Bar that practice before it, in addition the Federal Rules of Procedure; that's the power under which I will conduct the hearing.

> Now, I'm concerned with what can be infractions of conduct. I don't know if they're there. They've been called to my attention. I'm not reaching any conclusions. I'm only inquiring and I have to find out.... I would hope I have the cooperation of everyone to do this expeditiously and get finished.

> Now, I feel there is enough that has been produced by the previous witness's testimony for me to inquire further of the law firm representing Esso and of the representatives of Esso both in Puerto Rico and here in St. Croix.[3]

*Id.* at 73-74. After holding further discussions with counsel, the court concluded that it would be best to provide new counsel in the matter with more time to acquaint themselves with the record and various accusations. *Id.* at 95. Thus, the court determined that the hearings would reconvene in December of 1993 and directed all but the new counsel to submit briefs setting forth the history of this matter, what issues and conduct are before the court, and suggestions as to how the court should proceed when the matter is reconvened in December. *Id.* Such briefs were filed by the parties in

---

[3] The court went on to explain in more detail why and on what grounds the conduct of Esso and its representatives was being evaluated as part of the fact-finding hearings. *See* 10/29/93 Tr. at 85.

early November. The briefs filed by the movants in the underlying action argued that the record contained sufficient evidence of wrongdoing warranting the court's consideration of monetary sanctions as well as the sanction of dismissal. *See* Four Winds Memorandum Regarding Issues Raised at Fact-Finding Hearing (dated Nov. 5, 1993) at 21; Defendant Texaco's Position Paper (dated Nov. 9, 1993) at 9, 15.

By letter dated December 7, 1995, the court instructed counsel of its intent on how to proceed with the continuation of the fact-finding hearings scheduled for December 9 and 10, 1993. The letter stated that the court's October 25, 1993 Order remained in effect and that counsel were to submit witness lists indicating what witnesses they intended to call.[4] Following the presentation of all scheduled witnesses on December 9 and 10, the court gave all counsel one last chance to present any other witnesses whose testimony they wished the court to consider. 12/10/93 Tr. at 90. The court then entertained closing arguments and afforded counsel the additional opportunity to submit briefs presenting any further arguments on the matter before the court. Subsequently, on March 20, 1995, the court issued an opinion setting forth findings of fact regarding occurrences of misconduct throughout the discovery process.

On the above record, the Clarification Movants cannot in good faith argue that they did not have notice that the court was conducting a fact-finding hearing with respect to various allegations of discovery misconduct on the part of Esso, its representatives and its former attorneys. The only due process issue which remains is whether the Clarification Movants were given a sufficient opportunity to be heard.

In *Harris v. City of Philadelphia,* the City of Philadelphia appealed a district court order holding the City in contempt on the grounds that the district court failed to hold an evidentiary hearing before issuing the contempt order. *Harris,* 47 F.3d at 1339. In *Harris,* during

---

[4] Clarification Movants make much of the fact that the December 7, 1993 letter from the court indicated that direct examination would be limited to 30 minutes and that cross-examination by a party representative would be limited to 15 minutes. The court initially made counsel aware at the October 29, 1993 hearing that it was considering limiting the time for the examination of witnesses. 10/29/93 Tr. at 74-75. However, the court made clear that if more time was necessary, it would be provided. *Id.* at 75.

360

a hearing before the district court, the court expressed its inclination to impose fines for the City's failure to comply with the court's orders, and told the City that it would hear anything the City had to say. *Id.* The City did not seek a continuance and did not present any witnesses. Instead, the City argued a defense to contempt. The Third Circuit Court of Appeals affirmed the district court's contempt order concluding that the City had a sufficient opportunity to address its deficient conduct before a finding of contempt was issued. *Id.* The Third Circuit determined that a further evidentiary hearing would not have contributed anything of substance to the record. *Id.*

■■ In the present matter, the court has built up a substantial record. It conducted four days of fact-finding hearings. Following the first two days of hearings, the court announced a six week continuance in order to afford all parties a further opportunity to prepare for the presentation of witnesses and documents. The fact that all implicated persons either testified or were available to testify at the hearings is also of significant importance. The court's October 25, 1993 Order encouraged counsel to provide the court with a complete record incorporating all relevant evidence. On many occasions throughout the hearing, the court warned all parties that the purpose of the hearing was to develop a record from which the court could make findings of fact. Furthermore, the court instructed everyone present to proffer all indispensable witnesses. Following the hearings, the court allowed all parties to submit briefs presenting any further evidence or argument. On the basis of such a record, the court made findings of fact regarding discovery misconduct on the part of Esso, its representatives and its attorneys. Upon such an extensive record firmly supporting the court's findings, the court believes that its time would be wasted with little, if any, benefit to the Clarification Movants if the court was to reopen the record and entertain further testimony related to the factual findings made in its March 20, 1995 Opinion. All the Clarification Movants were given ample opportunity to present all relevant witnesses and evidence. Their decision not to present all fact witnesses at the fact-finding hearings does not now entitle them to a plenary hearing the substance of which would be virtually identical to the hearings previously held by the court.

Concluding that all parties were provided sufficient notice and opportunity to be heard, the court cannot find any reason warranting the holding of a new fact-finding hearing on the same factual issues it previously heard testimony on and with respect to which it issued findings of fact.

### II. Factual Disputes Raised by the Clarification Movants

The Clarification Movants contest a number of the court's factual findings and argue that they are entitled to present more evidence on the issues of misconduct considered by the court. The court spent four days holding hearings on precisely the misconduct issues which the March 20, 1995 Opinion addresses. The court heard from all persons whose actions are implicated in the misconduct. During the hearings an overwhelming amount of documents was produced. The court reiterated on numerous occasions that the purpose of the hearings was to collect all relevant evidence so that the court may make factual findings with regard to the alleged misconduct on the part of Esso, its representatives and its former counsel. The court instructed all counsel to produce all indispensable witnesses. Additionally, the court allowed all counsel to submit briefs at the conclusion of the hearings. All implicated parties, therefore, had ample opportunity, both orally and on paper, to address issues of alleged misconduct and put forward their best proof contesting the occurrence or degree of any such misconduct.

■ Furthermore, "[t]he purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Cord. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985), *cert. denied*, 476 U.S. 1171 (1986). Consequently, a "motion for reconsideration is improper when it is used 'to ask the court to rethink what it had already thought through—rightly or wrongly.'" *see Oritani S & L v. Fidelity & Deposit*, 744 F. Supp. 1311, 1314 (D.N.J. 1990), *rev'd on other grounds*, 989 F.2d 635 (3d Cir. 1993). The Clarification Movants have failed to present any law or facts the consideration of which necessitates any changes in the court's findings of fact. The Clarification Movants mere disagreement with the court's findings and credibility determinations does not con-

362

stitute proper grounds requiring the court to review its findings. *See G-69 v. Degnan*, 748 F. Supp. 274, 275 (D.N.J. 1990); *Carteret Sav. Bank, F.A. v. Shushan*, 721 F. Supp. 705, 709 (D.N.J. 1989), *modified on other grounds*, 919 F.2d 225 (3d Cir. 1990), *Egloff v. New Jersey Air Nat'l Guard*, 684 F. Supp. 1275, 1279 (D.N.J. 1988). The court has considered all the evidence submitted by the parties and has made the credibility judgments and factual assessments which are well within its province as fact-finder.[5]

 The court cannot be expected to hold a mini-trial on all issues of misconduct that occur during the discovery process. This proceeding is not one for. criminal contempt and, therefore, does not warrant the completeness of a full trial.

> The Supreme Court has pointed out that when evaluating what process is due there comes a point when the benefit of an additional safeguard to the individual affected by the government action, and to society in terms of increased assurance that the action is just, may be outweighed by the cost.... If judges are required to engage in unnecessarily extensive hearings, and in effect conduct a second trial on every issue of sanctions ... they will often refrain from imposing sanctions .... It is not necessary to follow the procedures required in criminal contempt proceedings in every case to insure that the imposition of a monetary sanction is justified.

---

[5] The court will address two factual disputes on the merits. First, Eugineo Romero argues that he corrected the error in the date of the Soil Tech data by an interrogatory response filed on April 17, 1990. Memorandum in Support of Motion for Clarification and Reconsideration by Eugineo Romero at 7-8. Prior to making its factual findings, the court considered the response Mr. Romero makes reference to and concluded that the date clarification did not pertain to the withheld analysis at issue in this matter.

Second, Jose Cepeda argues that the court lacks jurisdiction to impose any sanctions against him. Reply Memorandum in Support of Motion to Reconsider and Reargue by Respondents Goldman Antonetti & Cordova, Francis Torres and Jose Cepeda at 25. However, the docket maintained by the District Court of the U.S. Virgin Islands, Division of St. Thomas, reveals that Mr. Cepeda sought to be admitted pro hac vice in this court. *See* Four Winds Memorandum Regarding Issues Raised at Fact-Finding Hearing at 5 & n.18. Furthermore, Mr. Cepeda was found by the court to be a full participant in the misconduct by virtue of his own conduct as well as his supervisory role over various aspects of and attorneys involved in this environmental litigation. Consequently, the court finds that it does have jurisdiction to sanction Mr. Cepeda.

*Donaldson v. Clark,* 819 F.2d 1551, 1559 (11th Cir. 1987) (citations omitted). The court is only required to provide parties with sufficient notice and a meaningful opportunity to be heard. *See* Section I *supra* discussing due process requirements. Four days of hearings spanning over a six week period with a subsequent opportunity to present further argument and evidence in papers submitted after the hearings provided the parties with more than ample opportunity to present the court with any and all evidence regarding the alleged acts of misconduct. The court will not now expend more of its valuable time and resources in order to enlarge the already voluminous record and reconsider its factual determinations with regard to the discovery misconduct.

### III. Materiality & Actual Prejudice

 The Clarification Movants maintain that before this court may enter sanctions against them for discovery infractions, the court is required to find that the withheld information was material and that the withholding of such information prejudiced the other parties to the litigation. The Clarification Movants argue that the record lacks the evidence to support any such findings by the court.

 The Clarification Movants fail to cite any controlling legal authority in support of the novel standard they propose. The only case cited in support of the proposed standard is *Wilson v. Volkswagen of Am.. Inc.,* 561 F.2d 494, 516 (4th Cir. 1977), *cert. denied,* 434 U.S. 1020 (1978). *See* Esso's Motion to Clarify and Modify at 23. In *Wilson,* the Fourth Circuit Court of Appeals determined that before a district court may award default judgment as a sanction for nonproduction of discoverable information, it must be demonstrated that the withheld information materially affects the substantial rights of the other party and is prejudicial to the presentation of the other party's case. *Wilson,* 561 F.2d at 504, 516. However, as the Clarification Movants are well aware, in the Third Circuit, a district court must apply the *Poulis* factors to a determination of whether or not default judgment or dismissal should be imposed as a sanction for discovery misconduct. *Estate of Shear v. Commissioner of Internal Revenue Service,* 41 F.3d 103, 109 (3d Cir.

364

1994) (*Poulis* factors must be applied to a determination of whether default judgment or dismissal may be imposed as a sanction); *Hoxworth v. Blinder. Robinson & Co.. Inc.*, 980 F.2d 912, 919 (3d Cir. 1992) (district court must apply *Poulis* factors to determination of whether to impose a default judgment as a sanction); *see Harris*, 47 F.3d at 1330 n.18 (*Poulis* analysis applies when district court considers such severe sanctions as dismissal or default). Materiality is not factored into the *Poulis* analysis. In fact, the Third Circuit, in *Curtis T. Bedwell & Sons. Inc. v. International Fidelity Ins. Co.*, 843 F.2d 683, 693 (3d Cir. 1988), held that under the *Poulis* analysis, prejudice need not be "irremediable," and may consist of excess costs incurred as a result of the dilatory conduct or discovery violations. Furthermore, in *Republic of the Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1994), a case cited by Esso in its brief, the Third Circuit commented that "a grave wrongdoing may compel a more severe sanction than might a minor infraction; and wrongdoing that actually prejudices the wrongdoer's opponent or hinders the administration of justice may demand a stronger response than wrongdoing that, through good fortune or diligence of court or counsel, fails to achieve its untoward object." Such commentary clearly indicates that a court may impose sanctions no matter how immaterial the information withheld or how prejudicial the effect of the infraction, but, that the degree of sanctions imposed may vary according to degree of prejudice or severity of the misconduct.

The standard advocated by the Clarification Movants is not only inapplicable to the imposition of the sanctions of dismissal and default judgment, but it is equally inapplicable to imposition of monetary sanctions. This determination is well supported by the rules governing the discovery process. To be discoverable, information need not necessarily be material. The discovery rules provide that "[p]arties may obtain discovery regarding any matter … which is relevant to the subject matter involved in the pending action …. [and that] [t]he information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). "Our system of civil litigation cannot function if parties … suppress information called for upon discovery."

*Averbach v. Rival Mfg. Co.*, 879 F.2d 1196, 1201 (3d Cir. 1989) (quoting *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1345 (5th Cir. 1978)), *cert. denied*, 493 U.S. 1023 (1990). Adoption of the standard advocated by the Clarification Movants, i.e., that a wrongdoer can be sanctioned for discovery infractions only upon a court finding both materiality and actual prejudice, would necessitate the elimination of the court's inherent and essential authority to monitor the conduct of attorneys and litigants appearing before it. As discovery misconduct may occur regardless of the materiality of the information requested, adoption of such a standard would violate the principles set forth by the Supreme Court in *Chambers v. Nasco Inc.*, 501 U.S. 32 (1991) (discussing court's inherent power to sanction which extends to broad range of litigation abuses). Thus, a finding that the withheld information was material is not a separate prerequisite to the imposition of sanctions by a court. However, it is important to note that materiality may be considered by a court as part of an inquiry into the actual prejudice suffered by the party from whom information was withheld.

■ This court's March 20 Opinion concludes that the withholding of information and failure to cooperate in discovery demonstrated by Esso, its representatives and its former counsel prejudiced the other parties in the pursuit of their claims and defenses. However, the court has indicated that it intends to hold further hearings to determine the degree to which the other parties to the litigation were prejudiced by the misconduct identified in the court's Opinion. Consequently, all parties will have an opportunity to present evidence and argument with regard to the issue of actual prejudice suffered by the movants in the underlying proceeding. Thus, the court will not address the various factual arguments raised by the Clarification Movants on the issue of actual prejudice as such arguments are premature at this stage of the proceedings.

### IV. Summary & Order to Show Cause

■ To sum up, after giving all parties sufficient notice and an ample opportunity to be heard, this court, on the basis of the evidence produced and the arguments presented during four days of hearings and in subsequently submitted briefs, made factual

366

findings with regard to discovery misconduct engaged in by Esso, its representatives and its former counsel. On the issues of misconduct, the court has made its factual findings and these findings are no longer subject to dispute. The court has determined that, on the basis of its findings, imposition of sanctions against Esso and its former counsel is warranted. Furthermore, the court has laid out for all parties the possible sanctions which may be imposed in this matter. The court has ruled out contempt as a Possible sanction. In contrast, the court has reviewed the requirements for the imposition of monetary sanctions and the sanction of dismissal and intimated that the present matter may warrant the imposition of such sanctions. At a subsequent hearing, the Clarification Movants will have an opportunity to address why, in light of the court's factual findings, the court should refrain from imposing monetary and/or dismissal sanctions against them. In furtherance of this clarification of the court's March 20 Opinion, the court will issue an Order to Show Cause why monetary and/or dismissal sanctions should not be imposed against the Esso Defendants and their former counsel pursuant to FED. R. CIV. P. 11, 16, 37, 28 U.S.C. S 1927 and the inherent powers of the court.[6]

AND NOW in accordance with the reasons set forth in the court's Opinion dated this date and filed herewith,

IT IS HEREBY ORDERED THAT the Esso Defendants, Esso Standard Oil, S.A., Ltd., Esso Standard Oil, Co., (Puerto Rico), and Esso Virgin Islands, Inc., and the law firm of Goldman Antonetti & Cordova, and Francis Torres, Esq., Jose Cepeda, Esq., and Eugenio Romero, Esq. shall appear and show cause, before the St. Thomas Division of the United States District Court of the Virgin Islands (Honorable Stanley S. Brotman, USDJ, Sitting by Designation) on a date and time to be determined:

(a) Why, in light of the court's factual finding as stated in the court's March 20, 1995 Opinion and Order, the court should not impose monetary sanctions against them pursuant to FED. R. CIV. P. 11, 16, 37, 28 U.S.C. S 1927 and the inherent powers of the court; and

---

[6] By giving the parties an opportunity to settle their damage claims, the court was testing the waters. This process has given the court an indication regarding the nature of the claims to be considered at a subsequent hearing, if necessary.

(b) Why, in light of the court's factual finding as stated in the court's March 20, 1995 Opinion and Order, the court should not impose the sanction of dismissal against them pursuant to Fᴇᴅ. R. Cɪᴠ. P. 11, 16, 37, 28 U.S.C. S 1927 and the inherent powers of the court.

IT IS SO ORDERED.